**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**
Walter E. Hoffman U.S. Courthouse
600 Granby Street
Norfolk, Virginia 23510

**RANDOLPH J. MORRISON,**

        Plaintiff,

v.                                          Civil Action No. 2:13-cv-576

**WELLS FARGO BANK, N.A.**

        Defendant.

## AMENDED COMPLAINT

Now comes Randolph J. Morrison ("Morrison"), by counsel, and sets forth the following:

### I.   Jurisdiction

1. This Court has jurisdiction as to this case under the provisions of 28 U.S.C. § 1331 and 28 U.S. C. Section 1332 because the parties in interest are citizens of different states and the amount in controversy exceeds $75,000. The defendant is Wells Fargo Bank, N.A. ("Wells Fargo"), which is a citizen of the state of South Dakota, whereas, Morrison is a citizen of the Commonwealth of Virginia.

### Parties

2. Morrison is a natural person who resides in the Commonwealth of Virginia.

3. Wells Fargo is a for-profit bank doing business in the Commonwealth of Virginia which is a citizen of South Dakota.

### Facts

*Facts Applicable to All Counts*

4. On April 19, 2007, the late Viola H. Morrison ("the late Mrs. Morrison") was owner of a residence ("the home") located at 1092 Blackburn Lane, Virginia Beach, Virginia 23454 in the City of Virginia Beach.

5. On April 19, 2007, the late Mrs. Morrison entered into a mortgage loan ("the loan") in which she was the borrower and Wells Fargo was the lender. The loan was evidenced by a note ("the note") signed by her, and secured by a deed of trust, which was recorded in the office of the clerk of the Circuit Court of the City of Virginia Beach ("the public land records") on April 26, 2007 as Instrument No. 20070426000565070. The deed of trust named Samuel I. White, P.C. ("White") as trustee on the deed of trust.

6. Accompanying this amended complaint marked "Exhibit A" is a copy of the note.

7. Accompanying this amended complaint marked "Exhibit B" is a copy of the deed of trust.

8. The late Viola Morrison died. As a result, Morrison inherited ownership of the home.

**Count One – Breach of Provisions of Paragraphs 22, 24, and 16 of the Deed of Trust – Action Seeking Compensatory Damages**

9. The deed of trust at paragraph 24 provided as follows:

   Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all of the title, power and duties conferred upon Trustee herein and by applicable law.

10. The deed of trust at paragraph 22 provided, in pertinent part, as follows:

    NON-UNIFORM COVENANTS. Borrower and Lender …covenant and agree as follows:

    **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .**

> **. . . .**
> **The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date of notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.**
> **….**
> **The notice shall … inform Borrower . . . . of the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.**
> **…..**
> **If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. ……**
> **…..**
> **…..Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the property ….**
> **…..**
> **Trustee shall deliver to the purchase Trustee's deed conveying the Property with special warranty of title……**

11. The deed of trust provided that, if certain conditions precedent were satisfied, the trustee or any substitute trustee duly appointed could invoke a power of foreclosure sale, but specifically stated that the right of foreclosure sale was limited to a sale complying with applicable law. Specifically, the deed of trust stated in part in Paragraph 16, "All rights ...contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."

12. In paragraph J of a section on definitions, the deed of trust defined "Applicable Law" to mean "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law] as well as all applicable final, non-appealable judicial opinions."

3

13. According to the provisions of Section 22 of the deed of trust, as recited in this Count of this complaint, read in conjunction with the provisions of Paragraph 16 of the deed of trust, as recited in this Count of this complaint, where such provisions of paragraph 22 and 16 are read in conjunction with the definition of "Applicable Law" recited in this Count of this complaint, the deed of trust required that any foreclosure must be by the trustee on the deed of trust acting in compliance with all applicable Virginia statutes.

14. The applicable Virginia statutes include the following: Va. Code Ann. Section 55-59(9) providing that a trustee could be removed and a substitute trustee appointed by a document executed by the lender or by an entity owning more than 50% of the monetary obligation of the mortgage debt; (b) Va. Code Ann. Section 55-59.2 providing that any foreclosure be pursuant to a newspaper advertisement; (c) Va. Code Ann. Section 55-59.3 providing that any foreclosure much be according to a newspaper advertisement identifying the trustee or substitute trustee; and (d) Va. Code Ann. Section 55-59.1, which provides that a lender can foreclose on a lost note only if the lender has provided to the trustee or substitute trustee a lost note affidavit.

15. Under the contract provisions of the deed of trust, the lender could not foreclose in a non-judicial foreclosure through an entity not the trustee and not properly appointed as the substitute trustee. Further, under the contract provisions of the deed of trust, no entity could foreclose in a non-judicial foreclosure unless the foreclosure be by the trustee on the deed of trust or a duly appointed substitute trustee. Further, under the contract provisions of the deed of trust, any foreclosure process had to be by a newspaper advertisement which properly identified the trustee or substitute trustee on the deed of trust.

16. Virginia is both a judicial and non-judicial foreclosure state. No lender can effect a judicial foreclosure except through an order signed by a duly elected or appointed judge. No lender can effect a non-judicial foreclosure except through the trustee on the deed of trust or a duly appointed substitute trustee. In either case, the arbiter of the foreclosure process, a judge or a trustee or substitute trustee, under Virginia law must act with impartiality towards both the lender and the borrower and is vested with certain discretion. In non-judicial foreclosures, trustees or substitute trustees, acting as impartial arbiters, have discretion to do more in advertisement than the statutory minimum and have other discretion that may benefit either the homeowner and/or the borrower, depending on how the trustee or substitute other discretion that could benefit the borrower/homeowner. Any borrower and/or homeowner as to a non-judicial foreclosure process has standing that the arbiter of the non-judicial foreclosure process be the trustee appointed in the deed of trust or a properly appointed substitute trustee.

17. The provisions of Va. Code Ann. Section 55-59(9), incorporated into the deed of trust by the provisions of paragraph 22, 24, and 16 of the deed of trust, read according to the definition of "Applicable Law" in the definitions section of the deed of trust, do not allow appointment of a substitute trustee by mere wish of the lender. Rather, such appointment must be by an appointment document executed by the lender or the entity with over 50% of the monetary obligation of the mortgage debt.

18. Wells Fargo caused an instrument "the purported appointment of substitute trustee") to be recorded in the public land records that purported to remove White as trustee on the deed of trust and purported to appoint Equity Trustees LLC ("Equity Trustees") as substitute trustee.

19. The purported appointment of substitute trustee was a bogus document. On the second page of the purported appointment of substitute trustee is a copy of a staple mark that is not matched by any staple mark on the first page. There was a staple mark on the second page that was not on the first page. The second page had been part of a stack of such pages, stapled together, none of which pages contained any appointment information. This was part of a pattern and practice in the lending industry generally and as to Wells Fargo specifically, which involved replacing a proper process for appointment of a substitute trustee with a bogus process as follows: instead of having a lender representative sign the second page of a two-page document for appointment of a substitute trustee, a robosigner signed stacks of one-page documents stapled together, in which each page in the stack constituted only a one-page document which contained no appointment language. The person signing such documents (and the person who signed the second page of the purported appointment of substitute trustee as to this case) could do so faster by signing only the one page for signature as to each purported signature than would have been the case had the signer read and signed a two-page document as to each appointment, with the first page containing the appointive information. Thus, the signer of the second page of the purported appointment of Equity Trustee as to the deed of trust (as part of said general practice and as to the purported appointment of substitute trustee in this case) did not, in fact, sign anything that included any appointive language removing the original trustee and/or appointing a substitute trustee (and, therefore, in this case, did not sign anything that removed White or appointed Equity Trustees). The signer (in this case, the signer of the purported appointment of substitute trustee) signed only the signature language with language for notarization following such signature.

What was recorded as the purported appointment of substitute trustee (purporting to appoint Equity Trustees as substitute trustee) resulted from a later addition – not part of the actually notarized document – of a purported first page with purported appointive language.

20. Wells Fargo instructed Equity Trustees to foreclose on the home. However, Equity Trustees had no authority or power to do so for reasons including but not limited to the fact that White remained substitute trustee on the deed of trust. In instructing Equity Trustees to foreclose on the home, Wells Fargo breached the terms of paragraphs 16, 22, and 24 of the deed of trust, as recited herein above in this Count of this complaint.

21. Acting on its own and as agent for Wells Fargo, Equity Trustees caused to be published in a newspaper with general circulation in Virginia Beach, Virginia a newspaper advertisement for a foreclosure of the home on January 19, 2011. The said newspaper advertisement did not identify White as trustee but claimed that Equity Trustees was trustee on the deed of trust.

22. In acting through Equity Trustees to have such advertisement published, Wells Fargo breached the terms of paragraphs 16, 22, and 24 of the deed of trust because the purported appointment of substitute trustee was bogus, as recited herein above and because the newspaper advertisement falsely identified Equity Trustees as substitute trustee and did not identify White as trustee, although White remained trustee on the deed of trust.

23. In acting through Equity Trustees to cause said advertisement to be published, Wells Fargo, through Equity Trustees (its agent) breached the terms of the deed of trust because the said advertisement breached the terms of Va. Code Ann. Section 55-59.2, as

conditioned by Va. Code Ann. Section 55-59.3 and breached the latter statute because the said advertisement failed to identify White as trustee and wrongfully identified Equity Trustees as substitute trustee.

24. On January 19, 2011, Equity Trustees purported to sell the property by foreclosure ("the purported foreclosure"). Equity Trustees did so on its own and as agent for Wells Fargo. In acting through Equity Trustees to conduct a purported foreclosure auction, Wells Fargo breached the terms of the deed of trust because the said purported foreclosure breached the terms of Va. Code Ann. Sections 55-59(9) and 55-59.2, as conditioned by Va. Code Ann. Section 55-59.3 and breached the latter statute because the said purported foreclosure auction was not by White, which took no part in the purported foreclosure auction, but by Equity Trustees, which had no authority to conduct the said purported foreclosure auction and did so based on an advertisement that breached the terms of the applicable statutes, as set forth herein above.

25. HSBC USA, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Asset Backed Pass-Through Certificates, Series 2007-PA3 ("HSBC acting for Wells Fargo") made the high bid on at the purported trustee's sale for an amount significantly less than the actual value of the home.

26. Equity Trustees, acting on its own and as agent for Wells Fargo, caused a purported trustee's deed to be executed purportedly conveying title to the home to HSBC acting for Wells Fargo , which evicted Morrison and his family from the home through court process.

27. Pursuant to paragraph 20 of the deed of trust, Morrison, by counsel, sent a proper grievance letter to Wells Fargo, which responded to such letter by taking action causing

acceleration of sale of the home --by HSBC acting for Wells Fargo -- to a third party to prevent Morrison from being able to regain title to the home. This perpetrated and aggravated the harm to Morrison from Wells Fargo's said breach of the terms of paragraphs 16, 22, and 24 of the deed of trust.

28. As a proximate result of the said breaches by Wells Fargo of the terms of paragraphs 16, 22, and 24 of the deed of trust, Morrison sustained the following damages:

   A. He lost record title to his home.

   B. He lost substantial equity in his home.

   C. He and his family were evicted from the home.

   D. He had to undergo expenses related to moving as a result of the said wrongful eviction.

   E. He was deprived of the quiet enjoyment of the home.

   F. He was greatly inconvenienced.

29. As a result of the said breaches of the terms of the deed of trust as set forth in this Count of this complaint, Morrison is entitled to entry of a judgment in his favor against Wells Fargo for compensatory damages.

**Count Two Fraud – Action Seeking Compensatory and Punitive Damages and Attorney's Fees.**

30. Morrison re-avers the facts set forth in Count One of this amended complaint, except for averment as to remedy.

31. The late Veola Morrison died intestate in 2009. Morrison qualified as her administrator (personal representative of her personal estate).

32. Morrison sought a loan modification of the loan and, to that end, provided financial information to Wells Fargo.

33. On January 7, 2011, as a part of seeking a loan modification, Morrison wrote a letter to Wells Fargo's Loss Mitigation Department, which stated the following:

> Due to the loss of my mother, Veola Morrison, it took us a while to payoff her final expenses. We also had repair work to be done to the house. There were several creditors who were attempting to collect on bills my mother had. I paid them off so judgments would not attach to the home. After this, I got diagnosed with several illnesses and spent most of the summer in the hospital.
>
> I am now back at work and would like to take over the mortgage on the property. I would like to see if we can get an interest rate reduction to lower the mortgage payment.

34. On January 12, 2011, a representative of Wells Fargo ("the January 12, 2011 Wells Fargo representative") assured Morrison he had been approved for a loan modification and that the foreclosure scheduled for January 19, 2011 was being cancelled. This took place during a telephone conversation that lasted more than 40 minutes.

35. The said assurance made to Morrison by the January 12, 2011 Wells Fargo representative was intentionally false. Wells Fargo at that time intended to go forward with the foreclosure on January 19, 2011.

36. The said false assurance by Wells Fargo was in breach of a common law duty owed by Wells Fargo to Morrison not to defraud him.

37. Wells Fargo sent a letter dated January 14, 2011 ("the Wells Fargo January 14, 2011 letter")addressed to "Estate of Veola H. Morrison, C/o Randolph S. Morrison" which stated, in pertinent part, the following:

> "We have good news about the above referenced loan. Our goal is simple. We want to ensure that you have every opportunity to retain your home."

38. The Wells Fargo January 14, 2011 letter also stated, in pertinent part:

> …. Based on our telephone conversation and the financial information you provided, we would like to offer you a Special Forbearance Agreement ("Agreement").

10

39. The Wells Fargo January 14, 2011 letter provided for payments to begin on February 1, 2011 and further stated the following:

> "If your loan is in foreclosure, we will instruct our foreclosure counsel to suspend foreclosure proceedings once the initial installment has been received, and to continue to suspend the action as long as you keep to the terms of this Agreement.

40. The Wells Fargo January 14, 2011 letter strongly encouraged Morrison to believe the assurance recited in paragraph 34 of this amended complaint (although, in fact, that assurance was intentionally false). Although the Wells Fargo January 14, 2011 letter indicated that foreclosure was to be stopped, if scheduled, once the February 1, 2011 payment was received, by the time Morrison received the Wells Fargo January 14, 2011 letter, Wells Fargo had already assured him he was no longer in foreclosure and the Wells Fargo January 14, 2011 letter indicated in writing to Morrison that Wells Fargo expected him to continue in ownership of the home he had inherited from his mother, based on the financial information he had provided to Wells Fargo and on the basis of the telephone conversation between him and Wells Fargo (that had lasted more than 40 minutes) during which Wells Fargo had assured Morrison he no longer faced any foreclosure of the home on January 19, 2011.

41. Morrison believed the false assurance described in paragraph 34 of this amended complaint. He relied on the same within the meaning of *Nationwide v. Patterson*, 229 Va. 627, 331 S.E. 2d 490 (1983) because he believed the said false assurance and, on such basis, did not seek legal counsel who could have stopped the foreclosure.

42. Morrison's reliance on the false and fraudulent assurance recited in paragraph 34 of this amended complaint was reasonable because, inasmuch as he had written Wells Fargo to request that he be allowed to take over the loan and inasmuch as he asked for a loan

11

modification, and inasmuch as Wells Fargo through the January 12, 2011 Wells Fargo representative assured him he had been approved for a loan modification, he reasonably believed the assurance by the January 12, 2011 Wells Fargo representative that he no longer faced foreclosure of the home on January 19, 2011.

43. Morrison had reason to accept as true the assurance recited in paragraph 34 of this amended complaint for all of the reasons set forth in paragraphs 34 through this paragraph of this amended complaint. However, in reasonably relying upon the assurance by Wells Fargo that the home was not then any longer scheduled for foreclosure on January 19, 2011, Morrison did not focus on whether the loss mitigation assured as set forth in paragraphs 34 of this amended complaint, or the forbearance agreement as described in the Wells Fargo January 14, 2011 letter would mean that the loss mitigation assured by Wells Fargo was based on his offer to "take over" the loan or on a forbearance to him in his capacity as administrator of his mother's estate. Morrison was willing to proceed in either way and reasonably relied on the assurance he had received (as set forth in paragraph 34 of this amended complaint) that he no longer faced foreclosure of the home and loss of his equity on January 19, 2011.

44. Morrison had no reason to doubt the truthfulness of Wells Fargo's assurance as recited in paragraphs 34 of this amended complaint (although it was false) that he no longer faced foreclosure of the home on January 19, 2011. This was particularly so because of the reassuring nature of Wells Fargo's January 14, 2011 letter.

45. Morrison stood ready to sign such documents as might be necessary as to loss mitigation and stood ready to make the payments called for to begin on February 1, 2011 as set forth in Wells Fargo's January 14, 2011 letter.

46. Because he believed the false assurance set forth in paragraph 34 of this amended complaint, Morrison did not obtain legal counsel, who could have stopped the foreclosure on any of the following bases: (a) the appointment of substitute trustee was bogus; (b) Wells Fargo had promised loss mitigation as an alternative to foreclosure; and (c) as a last resort, Morrison, through legal counsel could have filed a Chapter 13 Bankruptcy with a plan to bring the loan current through such a Chapter 13 Bankruptcy.

47. Despite the said assurance by Wells Fargo (set forth in paragraph 34 of this amended complaint) that Morrison did not face foreclosure of the home on January 19, 2011, Wells Fargo, through Equity Trustees, in perpetration of the aforesaid fraud, conducted the purported foreclosure auction on January 19, 2011.  Morrison did not discover the aforesaid fraud until January 19, 2011.

48. As a proximate result of the aforesaid fraud perpetrated on Morrison as recited in detail herein above in this Count of this amended complaint, Morrison sustained the economic damages set forth in detail in Count One of this amended complaint.  His economic damages sustained as a result of such fraud were aggravated by Wells Fargo's actions in causing an acceleration of sale of the home to a third party to prevent any ability for Morrison to obtain a reversal of the foreclosure and trustee's deed.

49. As a proximate result of the said fraud by Wells Fargo perpetrated against Morrison, he sustained all of the damages set forth in detail in Count One of this amended complaint, plus great emotional distress, including but not limited to loss of sleep, a sense of great loss, tremendous loss of self- esteem, feelings of helplessness, irritability, loss of ability to perform as well at work, reduction in ability to concentrate, crying, loss of appetite, and loss of energy.

50. As a result of the facts set forth in this Count of this amended complaint, Morrison is entitled to entry of a judgment against Wells Fargo for compensatory damages.

51. As a result of the facts set forth in this Count of this amended complaint, there are grounds for the Court to enter a judgment in favor of Morrison against Wells Fargo for punitive damages.

52. As a result of the facts set forth in this Count of this amended complaint, there are grounds for the Court to enter an order requiring Wells Fargo to pay the reasonable attorney's fees of Morrison's legal counsel for preparing, filing and maintaining this Count of this lawsuit.

### Count Three Claim for Breach of Implied Covenant of Good Faith and Fair Dealing – Action Seeking Compensatory Damages

53. Morrison re-avers the facts set forth in Counts One and Two of this amended complaint except for the averments regarding remedy.

54. The note and deed of trust contained an implied covenant obligating the holder of the note, and/or any entity acting as creditor, to treat Morrison with good faith and fair dealing. Any holder of the note, as to the deed of trust, assumed, upon accepting endorsement or assignment of the note, the duty of good faith and fair dealing included in the note and deed of trust (as is so of every contract) that neither party shall do anything which will have the effect of destroying or injuring the other party to receive the benefit of that party's rights and benefits under the contract.

55. In addition, the note was a negotiable instrument governed by the Uniform Commercial Code ("UCC"), which explicitly recognized the implied covenant of good faith and fair dealing: "Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." Va. Code Ann. § 8.1A-304.

56. The rights under the deed of trust, under Virginia law, accrued to the holder of the note.

57. Because the note was a negotiable instrument under the UCC, and because Va. Code Ann. § 8.1A-304 imposed the duty of good faith and fair dealing on the holder of the note, the deed of trust also carried with it an implied duty of good faith and fair dealing as required by such statute.

58. Under the terms of the note and deed of trust, Wells Fargo had discretion as to the timing of any foreclosure and had discretion to continue or to cancel a foreclosure when set for any particular date. The note and deed of trust specified that if Wells Fargo exercised discretion to delay foreclosure, that did not constitute a waiver later to proceed with foreclosure. Because the note was a negotiable instrument, Wells Fargo had a duty to exercise good faith and fair dealing in making decisions regarding such discretion as to enforcement of the note against the estate of the late Veola Morrison by means of any foreclosure depriving Morrison of his home he had inherited from his mother (the late Veola Morrison). Further, as is true of any contract, Wells Fargo, in exercising its discretion as to timing and proceeding with any foreclosure process pursuant to the deed of trust, was required to exercise good faith and fair dealing not to proceed in such a manner as to deprive the borrower's successor-in-interest – Morrison (as owner of the home) of the benefits of the deed of trust by deprivation of such ownership through chicanery, bad faith, and unfair dealing.

59. The actions by Wells Fargo (on its own and/or through Equity Trustees as its agent) averred in Counts One and Two of this amended complaint, except for the paragraphs setting forth Morrison's averments regarding remedy as to each such count, constituted breaches of the aforesaid implied covenant of good faith and fair dealing.

60. As a proximate result of Wells Fargo's breaches of the aforesaid implied covenant of good faith and fair dealing, Morrison sustained the damages recited in Count One of this amended complaint.

61. As a result of Wells Fargo's breaches of the aforesaid implied covenant of good faith and fair dealing, as recited in this Count of this amended complaint, Morrison is entitled to entry of a judgment in his favor against Wells Fargo for compensatory damages.

## Call for Trial by Jury

62. Morrison calls for trial by jury.

## Conclusion

Wherefore, Morrison prays that the Court enter a judgment in his favor against Wells Fargo for $200,000 compensatory damages, $350,000 punitive damages and that the Court order Wells Fargo to pay the reasonable attorney's fees of his legal counsel for preparing, filing, and maintaining Count Two of this complaint.

Respectfully submitted,

**RANDOLPH J. MORRISON,**

By_____
        Of Counsel

Henry W. McLaughlin (VSB No 07105)
Drew D. Sarrett (VSB No. 81658)
The Law Office of Henry McLaughlin, P.C.
Eighth and Main Building
707 East Main Street, Suite 1375
Richmond, Virginia
(804)205-9020; fax (877) 575-0245
*Of Counsel for Randolph J. Morrison*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2013 I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

>Hunter W. Sims, Jr., Esquire
>Kaufman & Canoles, P.C.
>150 West Main Street, Suite 2100
>Norfolk , Virginia 23510
>hwsims@kaufcan.com

>Christy L. Murphy, Esquire
>Kaufman & Canoles, P.C.
>150 West Main Street, Suite 2100
>Norfolk , Virginia 23510
>clmurphy@kaufcan.com

>/s/ Henry W. McLaughlin
>Of Counsel

>Henry W. McLaughlin (VSB No. 07105)
>Drew D. Sarrett (VSB No. 81658)
>The Law Office of Henry McLaughlin, P.C.
>707 East Main Street, Suite 1050
>Richmond, Virginia 23219
>(804) 205-9020; fax (877) 575-0245
>henry@mclaughlinvalaw.com
>drew@mclaughlinvalaw.com
>*Counsel for Randolph J. Morrison*

17