IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RANDOLPH J. MORRISON,

    Plaintiff,

v.                                          CIVIL ACTION NO. 2:13cv576

WELLS FARGO BANK, N.A.,

    Defendant.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Defendant" or "Wells Fargo") Motion to Dismiss for Failure to State a Claim against Plaintiff Randolph J. Morrison ("Plaintiff"). Plaintiff has filed a response. A hearing on this matter will not aid the Court's decisional process. Having carefully considered the parties' pleadings, this matter is now ripe for disposition. For the reasons set forth herein, the Motion to Dismiss the breach of Deed of Trust and breach of good faith and fair dealing claims is **GRANTED WITH PREJUDICE** and **DENIED** as to the fraud claim.

### I. FACTUAL AND PROCEDURAL HISTORY

On April 19, 2007, the late Mrs. Veola H. Morrison, Plaintiff's mother, entered into a mortgage loan agreement with Defendant for her home property at 1092 Blackburn Lane in Virginia Beach, VA ("Morrison Property"). Pl.'s Am. Compl. ¶ 3. The loan was evidenced by a Note and secured by a Deed of Trust that named Samuel I. White ("White") as trustee. *Id.* ¶ 4. The Note and Deed of Trust provide that the trustee may invoke the power of sale upon certain conditions. Def.'s Mot. Dismiss 3. The Deed of Trust also provides for the trustee to be removed and a successor trustee to be appointed. Pl.'s Am. Compl. ¶ 8. Equity Trustees LLC

1

was eventually appointed as trustee in place of White through the execution of an Appointment of Substitute Trustee two-page document. Pl.'s Opposition to Mot. Dismiss 9.

Mrs. Morrison died intestate in 2009. *Id.* at 5. Defendant began foreclosure proceedings on the Morrison Property and intended to foreclose on January 19, 2011. Def.'s Mot. Dismiss 3. On January 7, 2011, Plaintiff wrote a letter to Well Fargo Bank's Loss Mitigation Department, notifying Defendant that he wished to assume the mortgage on the Morrison Property and discuss an interest rate reduction to lower loan payments. Pl.'s Opposition to Mot. Dismiss 6. Then, on January 12, 2011, Plaintiff maintains that he had a telephone conversation with a Wells Fargo employee who assured him that he was approved for a loan modification and the foreclosure would not take place on January 19, 2011. *Id.* Plaintiff also contends that Defendant sent him a letter dated January 14, 2011, addressed to "Estate of Veola H. Morrison, c/o Randolph S. Morrison," which offered him a Special Forbearance Agreement, specified that the first payment was due on February 1, 2011, and stated that Defendant would "instruct its foreclosure counsel to suspend foreclosure proceedings once the initial installment has been received, and to continue to suspend the action as long as you keep to the terms of this Agreement." *Id.* at 6-7. On January 19, 2011, Equity Trustees LLC conducted a foreclosure auction and the Morrison Property was sold to HSBC USA. *Id.* at 9. The Morrison Property was later sold to a third party. *Id.* at 10.

On February 15, 2012, Plaintiff filed a Complaint against Defendant in the Circuit Court for the City of Virginia Beach, Virginia. After Defendant filed and scheduled for hearing a Motion Craving Oyer and a Demurrer, Plaintiff filed a Motion for Nonsuit, which was granted on July 25, 2012. On January 22, 2013, Plaintiff again filed a Complaint against Defendant in the Circuit Court for the City of Virginia Beach. On October 23, 2013, Defendant

2

simultaneously filed a Notice of Removal to remove the case to federal court and a Motion to Dismiss. Plaintiff then filed an Amended Complaint on November 8, 2013. On November 15, 2013, Defendant filed the instant Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss") for failure to state a claim. On November 29, 2013, Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss his Amended Complaint ("Opposition Memorandum"). On December 4, 2013, Defendant filed a Reply to Plaintiff's Opposition Memorandum. Plaintiff and Defendant both requested a hearing on this matter.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that, in addition to a statement of the court's jurisdiction and a demand for relief, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. "To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (internal quotations omitted)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Specifically, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For purposes of a Rule 12(b)(6) motion, courts may only rely upon matters in the pleadings, including the complaint's allegations and the documents attached as exhibits or incorporated by reference. *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). *See also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985) (noting

3

that courts are not required "to conjure up questions never squarely presented to them").

Federal Rule of Civil Procedure 9(b) prescribes a heightened pleading standard for fraud claims. A party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to allege the particulars of "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

### III. DISCUSSION

**A. Breach of Deed of Trust**

Defendant argues that Plaintiff's breach of Deed of Trust claim should be dismissed because Plaintiff has not demonstrated that he has standing to sue for breach of contract based on the successor trustee appointment. Defendant asserts that Plaintiff's injuries in the form of loss of record title, loss of equity, eviction, loss of quiet enjoyment and inconvenience stem from the failure to make payments on the Note, not from the appointment of a substitute trustee. Defendant contends that without identifying a causal connection between the appointment and his injuries, in addition to failing to argue that proper appointment of a substitute trustee would redress those injuries, Plaintiff does not establish that he has standing. Also, Defendant argues that Plaintiff's breach of Deed of Trust claim should be dismissed because Plaintiff does not adequately undermine the validity of the successor trustee appointment. Defendant does not believe that the Appointment of Substitute Trustee document is a "bogus" document. Defendant states the only contentions supporting this allegation of bogusness are that the staple marks on the two pages of the document do not match and the filing of the Appointment of Substitute

4

Trustee was not in compliance with the Virginia Code, neither of which establish a breach of any legally enforceable obligation to Plaintiff.

Plaintiff asserts that as the homeowner, he has standing to contest a "bogus" Appointment of Substitute Trustee. This assertion is based on Virginia state court rulings that Plaintiff cited and attached to his Opposition Memorandum as exhibits. Plaintiff claims that Defendant breached paragraphs 16, 22 and 24 of the Deed of Trust by failing to comply with applicable law governing the contract. Specifically, Plaintiff avers that Defendant did not lawfully remove White as trustee because the notarized document effectuating Equity Trustees' appointment was a "bogus" document. Plaintiff alleges that the second page was not attached to the first page when the document was signed, and the second page was later signed by a "robosigner." Consequently, because the second page of the document describing the appointment of Equity Trustees was not properly signed or notarized, all subsequent activities related to or performed by Equity Trustees as successor trustee are invalid, including the published notice of foreclosure and the actual foreclosure sale.

A trustee's power to foreclose is conferred by the deed of trust. *Fairfax Cnty. Redevelopment & Hous. Auth. v. Riekse*, 281 Va. 441, 445-46, 707 S.E.2d 826, 829 (2011). The two purposes of a deed of trust are "to secure the lender-beneficiary's interest in the parcel it conveys and to protect the borrower from acceleration of the debt and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes." *Mathews v. PHH Mortgage Corp.*, 283 Va. 723, 732, 724 S.E.2d 196, 200 (2012). A substitute trustee may be appointed under a separate notarized document by removal of the original trustee named in the deed of trust. *See generally Wachovia Bank, N.A. v. Van Huyck*, 64 Va. Cir. 306 (2004); *see also* VA. CODE ANN. § 55-59(9) ("The party secured by the deed of trust, or the holders of

greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees . . . by executing and acknowledging an instrument designating and appointing a substitute."). Under Virginia law, "[a] material breach [of a deed of trust] is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Mathews*, 283 Va. at 730. To sue for a breach of a deed of trust, one must have standing to "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Therefore, in Virginia, to sue on a contract one must be a party to or beneficiary of the contract. *See Mich. Mut. Ins. Co. v. Smoot*, 129 F. Supp. 2d 912, 920 (E.D. Va. 2000).

Plaintiff has not alleged that he is a party, intended beneficiary nor had direct involvement in the Appointment of Substitute Trustee execution. Without an enforceable contract right, Plaintiff lacks standing to attack the validity of the appointment. *See Bennett v. Bank of Am., N.A.*, 3:12CV34-HEH, 2012 WL 1354546, at *7 (E.D. Va. Apr. 18, 2012) (noting that under similar facts where a plaintiff challenged the appointment of a substitute trustee, "[a]s an initial matter, because Plaintiff was not a party to the document appointing PFC, he lacks standing to challenge the validity of the appointment. BANA appointed PFC as substitute trustee and the lender's counsel prepared the document; Bennett had no direct involvement."). Furthermore, the appointment does not affect Plaintiff's rights or duties. Plaintiff still had the obligation to make payments under the Note. Accordingly, he has no standing to challenge the substitute trustee appointment.

Although the issue of standing is enough to merit dismissal, the Court will address the validity of the Appointment of Substitute Trustee. Plaintiff's argument that the notarized

document purporting to appoint Equity Trustees is invalid because the "robosigned" second page of the document was not attached to the first page at execution must fail. Plaintiff alleges that the mismatched stapling undermines the validity of the document. However, Plaintiff does not allege any additional or more specific facts to establish invalidity, but only proffers mere conclusions that the document was "robosigned" and improperly notarized. Plaintiff also does not allege how the method used to execute the document harmed him. *See id.*; *see also Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 743 (E.D. Mich. 2010) *aff'd sub nom. Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010) ("Borrower certainly has an interest in avoiding foreclosure. But the validity of the assignments does not affect whether Borrower owes its obligations, but only to whom Borrower is obligated.").

Also, Plaintiff cites no authority that requires papers to be stapled together for proper notarization. In fact, at least two district courts have held in cases with similar allegations that procedural irregularities in mortgage documents do not undermine their legal validity. *Wolf v. Fannie Mae*, 3:11CV25, 2011 WL 5881764, at *8-10 (W.D. Va. Nov. 23, 2011) (finding the allegation that first page was not stapled to second page when signed unsupported by citation to any law requiring "all of the individual pages need to be stapled or clipped together when the page containing the signatory line is actually signed." Without alleging or arguing any additional facts to support her claim, such as the signature on the second page was forged, the document misrepresented the intentions of the signed parties, or the two pages of the appointment were executed in different places or at different times, the invalid appointment of substitute trustee claim had to be dismissed); *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, MDL 09-2119-JAT, 2011 WL 4550189, at *5 (D. Ariz. Oct. 3, 2011) ("[T]he allegations

7

of robosigning do not state a claim for two reasons. In the first place, Plaintiffs have not pled sufficient facts that parties who are represented to have signed the MERS Assignments, 'did not sign the document, and/or did not have the authority to sign the document, and/or did not have knowledge of the representation contained in the document.' . . . Yet, even if these allegations were well pled, Plaintiffs lack standing to challenge the validity of the MERS assignments. Even if an assignment were voidable, an action to declare an assignment void could only be brought by someone who can demonstrate a concrete and particularized injury in fact that is fairly traceable to the challenged assignment."). Therefore, Defendant's Motion to Dismiss the breach of contract claim pertaining to the Deed of Trust is granted.

### B. Breach of Covenant Warranty of Good Faith and Fair Dealing

Plaintiff argues that the Note and Deed of Trust contained an implied covenant of good faith and fair dealing that imposed obligations on the holder of the Note. Defendant challenges Plaintiff's claim because it does not believe that Virginia recognizes an independent cause of action for breach of good faith and fair dealing.

"In Virginia, every contract contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009); *Pa. Life Ins. Co. v. Bumbrey*, 665 F.Supp. 1190, 1195 (E.D. Va. 1997) (citations omitted) ("Under Virginia law, every contract contains an implied covenant of good faith and fair dealing in the performance of the agreement"). The implied covenant of good faith and fair dealing prohibits a party with valid contractual rights from exercising such rights in bad faith. *Va. Vermiculite Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998) (holding "it is a basic principle of contract law in Virginia . . . that although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such

discretion is vested solely in that party."). However, the covenant of good faith and fair dealing does not offer an independent cause of action for breach of a contract involving an interest in real property. *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 33, 466 S.E.2d 382, 385 (1996) (holding "while a duty of good faith and fair dealing exists under the U.C.C. as part of every commercial contract, we hold that the failure to act in good faith under § 8.1-203 does not amount to an independent tort.").

Plaintiff fails to state a claim upon which relief may be granted for two reasons. First, "'no implied duty arises with respect to activity governed by express contractual terms.'" *Bennett*, 2012 WL at *10 (quoting *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009). This means that "'when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights.'. . . [But] a party may not exercise contractual discretion in bad faith.'" *Id.* Since the allegations underlying Plaintiff's good faith and fair dealing claim pertain to Defendant's exercise of its express contractual right to foreclose for nonpayment of the loan and do not allege that Defendant proceeded with its contractual right to foreclose in bad faith, Plaintiff has not stated a claim for the breach of the implied covenant of good faith and fair dealing. Second, breach of covenant of good faith and fair dealing is not an independent cause of action in this case because the Uniform Commercial Code ("U.C.C.") does not apply to such a transaction that involves creation or transfer of an interest in real property. *See* VA. CODE ANN. § 8.9A-104(d)(11) (noting that the U.C.C. does not apply to contracts involving the "creation or transfer of an interest in or lien on real property"). Therefore, Defendant's Motion to Dismiss the breach of good faith and fair dealing claim is granted.

## C. Fraud

Defendant contends that Plaintiff failed to state a claim for fraud because his pleadings did not explain the circumstances constituting fraud with particularity and he did not demonstrate any reasonable reliance on a false representation. Defendant challenges the sufficiency of the facts Plaintiff pled to establish that the Wells Fargo employee falsely represented the bank's approval of a loan modification or cancellation of foreclosure proceedings. Defendant asserts that Plaintiff has not specified the time, place and content of the alleged fraud because he has not named the Wells Fargo employee that he spoke with on January 12, 2011. Defendant also challenges if Plaintiff could have reasonably expected to receive a loan modification since he did not possess the loan with Wells Fargo and the January 14, 2011 letter referenced only loan forbearance. Additionally, Defendant challenges any supposed reliance on the January 12, 2011 mention of a cancelled foreclosure when the subsequent letter specified that foreclosure proceedings would be suspended after the initial installment had been received.

Plaintiff counters that he was intentionally misled by the Wells Fargo employee who told him by phone that the Morrison Property would not be foreclosed on January 19, 2011. Plaintiff said he reasonably relied on that employee's statement as well as the subsequent letter stating that foreclosure proceedings would be stayed once the initial installment was made. As a result of this reliance, Plaintiff did not take further action available to him to prevent the foreclosure, such as acquiring legal counsel.

To plead a claim for fraud, a plaintiff must show: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005). In general, "if a defendant makes a promise that, when

made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *SuperValu, Inc. v. Johnson*, 276 Va. 356, 368, 666 S.E.2d 335, 342 (2008)). The heightened pleading standard for fraud claims requires a party alleging fraud to state with particularity the time, place and contents of the fraud as well as who committed the misrepresentation and what he or she obtained. *See* Fed. R. Civ. P. 9(b); *Harrison*, 176 F.3d at 786. To satisfy this pleading standard, "a plaintiff must clearly allege a contemporaneous intent not to perform at the time a fraudulent statement is made . . . Rule 9(b), however, explicitly allows intent and other conditions of a person's mind to be alleged generally." *Albayero v. Wells Fargo Bank, N.A.*, 3:11CV201-HEH, 2011 WL 4748341, *4-5 (E.D. Va. Oct. 5, 2011) (citing *Station # 2, LLC v. Lynch*, 280 Va. 166, 172, 695 S.E.2d 537, 540 (2010)).

Plaintiff satisfies the pleading standards to state a claim for fraud. As required under Rule 9(b), Plaintiff alleges the time, place and contents of the intentionally misleading false representation made by the Wells Fargo employee during the January 12, 2011 phone conversation. Even though Plaintiff did not identify the name of the Wells Fargo employee with whom he spoke, he identifies the employee as an agent of Wells Fargo and avows generally that Defendant intended to foreclose on the Morrison Property on January 19, 2011 regardless of the employee's assurance that the foreclosure was cancelled, which is sufficient to survive a motion to dismiss. *See* Pl.'s Am. Compl. ¶ 35 (Plaintiff asserts, "Wells Fargo at that time intended to go forward with the foreclosure on January 19, 2011."); *see also Matanic v. Wells Fargo Bank, N.A.*, 3:12CV472, 2012 WL 4321634, at *6 (E.D. Va. Sept. 19, 2012). Coupling this statement with the subsequent letter stating that foreclosure will be stayed after the initial installment was paid and setting the due date for the initial installment as February 1, 2011, this Court may draw

a reasonable inference that Defendant is liable for intentionally misleading Plaintiff based on the factual allegations offered in the Amended Complaint.

Plaintiff also satisfies the reasonable reliance requirement. In reliance on statements made by the Wells Fargo employee and the letter mailed by Defendant, it was reasonable for Plaintiff to decide not to obtain private counsel to stop the January 19, 2011 foreclosure because he was under the impression that the foreclosure would not take place on that date. Also, because the Wells Fargo employee discussed options to prevent foreclosure with Plaintiff and the subsequent letter was addressed to his care, it was reasonable for him to believe that he was authorized to modify the loan or delay foreclosure through forbearance even though he was not the borrower on the Note. Therefore, Defendant's Motion to Dismiss Plaintiff's fraud claim is denied.

## IV. CONCLUSION

Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED-IN-PART WITH PREJUDICE** and **DENIED-IN-PART**. Plaintiff fails to state breach of Deed of Trust and breach of good faith and fair dealing claims upon which relief may be granted. Accordingly, the Motion to Dismiss the breach of Deed of Trust and breach of good faith and fair dealing claims is **GRANTED WITH PREJUDICE**. Plaintiff states a plausible fraud claim that withstands Defendant's request for dismissal. Accordingly, the Motion to Dismiss the fraud claim is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
January /5, 2014

/s/
Raymond A. Jackson
United States District Judge